**KENTUCKY BAR ASSOCIATION,**
Complainant,

v.

**Norbert J. DeCAMILLIS, Respondent.**

Supreme Court of Kentucky.

Jan. 14, 1977.

Rehearing Denied April 1, 1977.

Leslie G. Whitmer, Director, John T. Damron, Asst. Director, Kentucky Bar Association, Frankfort, for complainant.

Frank A. Logan, Louisville, for respondent.

PER CURIAM.

This is a disciplinary action brought by the Kentucky Bar Association against respondent, DeCamillis. The Kentucky Bar Association charged DeCamillis with the following offenses:

"The first count charged the respondent with having a discussion with an adverse party in litigation while the adverse party was represented by counsel.

"The second count charges that the respondent borrowed $1,500.00 from the adverse party while the litigation was pending as evidenced by a note attached as exhibit 'A' to the charges. It is also charged that the respondent executed an agreement to settle his client's litigation without the approval of his client. The agreement was attached as exhibit 'B' to the charges.

"The third count charges that the respondent agreed to buy certain items of furniture for his client in order to correct the difference of the terms of the agreement shown by exhibit 'B' and the actual agreement executed by his client Jacque-

line Foley. It further charges that the respondent executed a receipt for the attorney's fee from the adverse parties when in fact the adverse party had paid no fee whatsoever to the respondent. The charges were fully but concisely stated in the formal charge."

The Board of Governors found DeCamillis guilty of unprofessional conduct and recommended his permanent disbarment. In its recommendation the Board of Governors stated:

"It is respectfully recommended to the Supreme Court of Kentucky that Norbert J. DeCamillis be disbarred from the practice of law in Kentucky and be required to pay the costs in this action."

This case arises out of a divorce action by Jacqueline Foley against Glen Foley, her husband. DeCamillis was Jacqueline's attorney. For a variety of reasons the matter was delayed. It was finally brought to litigation in November of 1974.

At a pre-trial hearing, it was apparent that the parties could not agree as to the disposition of marital property, and other matters. On February 3, 1976, the trial court set a hearing to determine the issues. In December of 1975, DeCamillis approached the respondent, Glen Foley, and discussed the trial proceedings with him, apparently in an effort to reach some kind of an agreement. At that time he requested a loan from Foley in the sum of $1500.00. Foley, after consulting his attorney, loaned DeCamillis the $1500.00, and in return received a note from him. At that time another document was drafted to include the terms of the property agreement. Jacqueline was to receive $3,000.00 maintenance, $1500.00 as a repayment to her mother, and a tentative agreement was recited as to the division of the furniture.

Sometime in January DeCamillis saw Glen Foley again. Foley was concerned about the attorney fees and a difference relating to the disposition of the furniture. DeCamillis told Foley not to worry about the furniture that he would buy furniture for Mrs. Foley and that he would waive all attorney fees. He drafted another docu-

ment stating that all attorney fees had been paid, when in fact they had not been paid.

On February 3, 1975, a trial was commenced on the divorce proceedings. The attorneys for Glen Foley brought to the court's attention the unethical conduct of DeCamillis and requested that the trial be continued until Jacqueline Foley could obtain other counsel. The trial court agreed and the trial was continued. Jacqueline finally obtained a divorce decree.

It is obvious that the Code of Professional Responsibility promulgated by the American Bar Association and adopted by the rules of this court was violated by DeCamillis. RAP 3.130. As to count 1, the visitation of DeCamillis with the adverse party, ethical consideration EC 7–18 and disciplinary rule DR 7–104 are involved. EC 7–18 states:

"The legal system in its broadest sense functions best when persons in need of legal advice or assistance are represented by their own counsel. *For this reason a lawyer should not communicate on the subject matter of the representation of his client with a person he knows to be represented in the matter by a lawyer, unless pursuant to law or rule of the court or unless he has the consent of the lawyer for that person.*" (Emphasis added).

DR 7–04 entitled Communicating With One of Adverse Interest states:

"(a) In the course of his representation of a client a lawyer shall not:

(1) communicate or cause another to communicate on the subject of the representation with a party he knows to be represented by a lawyer in that matter unless he has the prior consent of the lawyer representing such other party or is authorized by law to do so."

Thus, it is clear from the literal reading of these canons that DeCamillis violated the ethical considerations.

As to charge 2, relating to the acceptance of $1500.00, supposedly as a loan, ethical considerations EC 5–1 and EC 5–2 in part

set the stage for DR 5–101(a), 5–105(a) and 5–107(a)(2):

> "The professional judgment of a lawyer should be exercised within the bounds of the law solely for the benefit of his client and free of compromising influences and loyalties. Neither his personal interests, the interest of other clients nor the desires of third persons should be permitted to dilute his loyalty to his client."

See also EC 5–2, which states:

> "After accepting employment a lawyer should carefully refrain from acquiring a property right or assuming a position that would tend to make his judgment less protective of the interest of his client."

It is contended by the Kentucky Bar Association that the $1,500.00 loan actually was an ill-disguised bribe that was given in consideration for reducing the amount of the judgment being sought by DeCamillis. At one time DeCamillis argued that there were hidden assets belonging to Glen Foley and that his client was entitled to $10,-000.00. Whether or not this is true, the fact that he sought a loan from an adverse party is highly improper and violates fundamental rules of ethical consideration.

■ As to the charge relating to the waiving of attorney fees and purchasing furniture, the ethical considerations are also clear that a lawyer shall not advance funds to his client in order to pursue the litigation. The waiving of the fees by itself is perhaps proper, but the fact that he was making this agreement without the consent of his client, without any information to the client about it, was improper.

DeCamillis argues that his procedural due rights were violated when members of the local bar assembled in the trial court's chambers and talked about the case without notifying him of the charges. This argument is totally without merit. DeCamillis received a full hearing before the Board of Governors. He presented his arguments and his witnesses. *Kentucky Bar Association v. Franklin,* Ky., 534 S.W.2d 459 (1976). DeCamillis also argues that although his actions were improper and reflected bad judgment, he did not do it in bad faith or with malice. The Board of Governors of the Kentucky Bar Association found otherwise.

■ This court is of the opinion that the proper administration of justice and the proper regard for the integrity of the profession compel it to conclude that DeCamillis is unfit to continue as a member of the Bar of this Commonwealth.

It is therefore ordered and adjudged that respondent, Norbert J. DeCamillis, be permanently disbarred from the practice of law in the Commonwealth of Kentucky and that he pay the costs of this action.

All concur.